Michael J. Niborski (State Bar No. 192111)
*mniborski@pryorcashman.com*
**PRYOR CASHMAN LLP**
1801 Century Park East, 24th Floor
Los Angeles, California 90067-2302
Tel: (310) 556-9608
Fax: (310) 556-9670

Ilene S. Farkas (pro hac vice application forthcoming)
*ifarkas@pryorcashman.com*
**PRYOR CASHMAN LLP**
7 Times Square
New York, New York 10036-6569
Tel: (212) 421-4100
Fax: (212) 798-6306

*Attorneys for Defendant*
ATLANTIC RECORDING CORPORATION

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNATHON J. PUCKETT,<br><br>          Plaintiff,<br><br>   vs.<br><br>PETER GENE HERNANDEZ; and<br>ATLANTIC RECORDS,<br><br>          Defendants. | Case No. 2:16-cv-02199 SVW (AGRx)<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>*Declaration of Ilene S. Farkas filed concurrently herewith*<br><br><u>Hearing</u><br>Date: December 19, 2016<br>Time: 1:30 p.m.<br>Courtroom: 6 |

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that, on December 19, 2016, at 1:30 p.m., or as soon thereafter as this matter may be heard before the Honorable Stephen V. Wilson of the above-entitled Court, located at 312 N. Spring St, Los Angeles, California 90012, Courtroom 6, Defendant ATLANTIC RECORDING CORPORATION will and hereby does move this Court for an order dismissing the Complaint of Plaintiff JOHNATHON J. PUCKETT pursuant to Fed. R. Civ. P. 12(b)(6). This motion is made on the following grounds: (i) short and common phrases and phrases typically used to express an idea or theme are not protected under copyright law, (ii) themes are not protected under copyright law, and (iii) the lyrics at issue are not sufficiently similar to meet the relevant test for substantial similarity under copyright law.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Ilene S. Farkas, the pleadings and papers on file herein, and all other matters of which the Court may take judicial notice, and such other or further material as may be presented at or before the hearing on the Motion.

Pursuant to Local Rule 16-12(c), this Motion is exempt from the conference of counsel requirement of Local Rule 7-3 because Plaintiff is appearing pro se, is in custody, and is not an attorney.

**PRYOR CASHMAN LLP**

Dated: October 14, 2016        By:     */s/ Michael J. Niborski*
                                            Michael J. Niborski
                                            *mniborski@pryorcashman.com*
                                            Ilene S. Farkas
                                            (pro hac vice application forthcoming)
                                            *ifarkas@pryorcashman.com*

                                            *Attorneys for Defendant*
                                            ATLANTIC RECORDING
                                            CORPORATION

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ........................................................................ 1

STATEMENT OF FACTS ................................................................................ 2

    A.   The Parties ................................................................................................. 2

    B.   Plaintiff Brings Suit For Infringement .................................................... 3

ARGUMENT .................................................................................................... 7

    I.    STANDARD OF REVIEW ...................................................................... 7

    II.   PLAINTIFF FAILS TO STATE A CLAIM

          FOR COPYRIGHT INFRINGEMENT ................................................... 9

        A.   The Allegedly Copied Elements Of Cry

            Are Unprotectable As A Matter Of Law ........................................... 9

            1.   The Short, Commonplace Phrases At Issue

                Are Not Original to Plaintiff or Otherwise Protectable ............... 9

            2.   Even Assuming, *Arguendo,* That The Two Songs Share A Broad

                Theme, Themes Are Not Protectable As A Matter of Law ........ 12

        B.   No Substantial Similarity Exists Between

            Puckett's Song And Bruno Mars's Song .......................................... 13

CONCLUSION ............................................................................................... 18

i

# TABLE OF AUTHORITIES

**CASE**                                                                **PAGE(s)**

*Advanz Behavioral Mgmt. Res. v. Miraflor,*

    21 F. Supp. 2d 1179 (C.D. Cal. 1998) ................................................................. 10

*Althouse v. Warner Brothers Ent.,*

    No. CV 13–00696-RGK(SSx), 2014 WL 2986939

    (C.D. Cal. Apr. 28, 2014) ................................................................................... 13

*Ashcroft v. Iqbal,*

    556 U.S. 662 (2009) ............................................................................................. 7

*Bell Atl. Corp. v. Twombly*,

    550 U.S. 544 (2007) ............................................................................................. 7

*Benal v. Paradigm Talent and Literary Agency,*

    788 F. Supp. 2d 1043 (C.D. Cal. 2010).............................................................. 11

*Braham v. Sony/ATV Music Publ'g*,

    No. 2:15–cv–8422, 2015 WL 7074571-MWF (GJSx)

    (C.D. Cal. Nov. 15, 2015)............................................................................ 11, 16

*Brave New Films 501(c)(4) v. Weiner*,

    No. C 08-04703 SI, 2009 WL 1622385

    (N.D. Cal. June 10, 2009) .................................................................................... 8

*Christianson v. West Publ'g. Co,*

    149 F.2d 202 (9th Cir. 1945) ............................................................................... 8

*Counts v. Meriwether,*

    No. 2:14–cv–00396-SVW-CW, 2015 WL 9594469

    (C.D. Cal. Dec. 30, 2015).......................................................................10, 11, 12

*DuckHole Inc. v. NBC Universal Media LLC,*

    No. CV 12–10077 BRO(CWx), 2013 WL 5797279

    (C.D. Cal. Sept. 6, 2013) ..................................................................................... 8

**CASE** ..................................................................................... **PAGE(s)**

*Feist Publ'ns, Inc. v. Rural Telephone Serv. Co., Inc.,*

    499 U.S. 340 (1991) ................................................................. 9

*Funky Films, Inc. v. Time Warner Ent. Co., L.P.,*

    462 F.3d 1072 (9th Cir. 2006) ........................................... 9, 14

*Gold Glove Prods., LLC v. Handfield,*

    648 Fed. Appx. 679 (9th Cir. 2016) .................................... 14

*Hayes v. Minaj,*

    2:12-cv-07972-SVW-SH, 2013 WL 11328453

    (C.D. Cal. Mar. 7, 2013) (Wilson, J.). ................................ 12

*Knievel v. ESPN,*

    393 F.3d 1068 (9th Cir. 2005) ............................................... 7

*Miller v. Columbia Broad. Sys., Inc.,*

    No. CV 78-4291-RMT(Sx), 1980 WL 1179

    (C.D. Cal. June 5, 1980) ...................................................... 13

*Motown Record Corp. v. George A. Hormel & Co.,*

    657 F. Supp. 1236 (C.D. Cal. 1987) .................................... 18

*Narell v. Freeman,*

    872 F.2d 907 (9th Cir. 1989) ...................................10, 12, 17

*Peters v. West,*

    692 F.3d 629 (7th Cir. 2012) ............................................... 11

*Pyatt v. Raymond,*

    462 Fed. Appx. 22 (2d Cir. 2013) ....................................... 14

*Reed v. Peterson,*

    No. C04-00228 WWS, 2005 WL 1522187

    (N.D. Cal. June 27, 2005) ............................................. 11, 18

**CASE** ............................................................................ **PAGE(s)**

*Steward v. West,*

   No. 2:13-cv-02449 BRO(JCx)

   (C.D. Cal. Sept. 6, 2013) ................................................. 11

*Swartz v. KPMG LLP,*

   476 F.3d 756 (9th Cir. 2007) ............................................ 7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*

   551 U.S. 308 (2007) ........................................................ 7

*Toliver v. Sony Music Entm't, Inc.,*

   149 F. Supp. 2d 909 (D. Alaska 2001)

   *aff'd,* 47 Fed. Appx. 496 (9th Cir. 2002) ..................... 14, 16

*White v. Twentieth Century Fox Corp.,*

   572 Fed. Appx. 475 (9th Cir. 2014) .............................. 13, 14

*Zella v. E.W. Scripps Co.,*

   529 F. Supp. 2d 1124 (C.D. Cal. 2007) ............................. 8


**STATUTES, RULES, AND REGULATIONS**

17 U.S.C. § 102(b) .......................................................... 13

Fed. R. Civ. P. 12(b)(6) ................................................. 1, 7

37 C.F.R. § 202.1(a) ........................................................ 10

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Atlantic Recording Corporation ("Atlantic Records") respectfully submits this memorandum of law in support of its motion to dismiss the complaint ("Complaint" or "Compl.") filed by Plaintiff Johnathon J. Puckett ("Plaintiff" or "Puckett") in this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiff, *pro se,* has brought this infringement action against Atlantic Records and Peter Gene Hernandez, popularly known as Bruno Mars ("Mars"; together, "Defendants") based on Plaintiff's alleged ownership of lyrics to a song entitled "Cry." Plaintiff claims that Bruno Mars's massive hit song, entitled "Grenade," recorded by Mars and released by Atlantic Records more than five years before Plaintiff filed the Complaint, infringes his rights in Cry because the choruses of both songs purportedly share the common theme of unrequited love and contain two similar, yet commonplace phrases that flow from this unprotectable theme. For this, Plaintiff demands $20 million.

It is well settled that this Court can review the two sets of lyrics at issue and determine, on a Rule 12(b)(6) motion to dismiss, that no substantial similarity exists between these two works as a matter of law. Once this Court examines the lyrics at issue, Atlantic Records respectfully submits that this Court will make such a determination and dismiss Plaintiff's Complaint.[1] Indeed, the two works at issue are entirely different songs that share little similarity beyond two ordinary phrases that are generic to the (unprotectable) arguably shared theme of jilted lovers.

More specifically, Plaintiff's claim should be dismissed because:

- <u>First</u>, it is black letter law that short and common phrases are not protected under copyright law. It is equally well established that phrases

---

[1] Defendant Mars has not been served with a copy of the summons and Complaint as of the filing of this Motion.

1

typically used to express an idea or theme are unprotectable. Thus, no infringement claim can be based on Plaintiff's use of the phrases "I would die for you baby" and "but you didn't do the same."

- **Second**, themes are not protectable. Plaintiff does not and cannot own the theme of a man who gives his all to his love interest only to be rejected.
- **Third**, the lyrics of Cry and Grenade as a whole are not remotely similar and certainly not similar enough to meet the relevant test for substantial similarity under copyright law. In fact, these two songs are strikingly *dissimilar*. Thus, even if the elements identified by Plaintiff were copied from Cry and were protectable (which they are not), there could be no finding of infringement given the myriad of differences between the works.

Accordingly, Atlantic Records' Motion should be granted in its entirety and the Complaint dismissed with prejudice.

## STATEMENT OF FACTS

### A.  The Parties

Atlantic Records is a preeminent record label with nearly 70 years of experience in the music business. Throughout those decades, it has been the home for dozens of legendary artists. Atlantic Records established a reputation in its early years as a premiere label for jazz, R&B, and soul artists. In the 1960s and 1970s, Atlantic Records expanded into rock, signing some of the most important acts of the era. Today, Atlantic Records proudly works with dozens of the world's most popular and influential musicians.

Bruno Mars is one of the brightest stars in music today. *See* Compl. ¶ 12. He is a multi-talented singer-songwriter, producer, dancer, choreographer, and instrumentalist who has won four Grammy Awards and many other accolades. His songs cover a variety of genres, including pop, hip hop, R&B, and more. He was chosen to perform during the Super Bowl halftime show twice, once as the headliner,

2

and once as a guest along with pop star Beyoncé.  Six of his singles have reached number one on the Billboard Hot 100 chart.

One of Bruno Mars's most popular singles is the song "Grenade."  As Plaintiff notes, Grenade was a smash hit.  *See* Compl. ¶ 26.  It was number one on the Billboard Hot 100 chart and international charts, and was tremendously well received by critics. *See id*.

Grenade tells the story of a man in love with a woman who does not reciprocate his feelings.  *See* Compl. Ex. C ("Oh, take, take, take it all but you never give"; "Gave you all I had and you tossed it in the trash").  The man declares his willingness to go to great lengths for the woman, focusing on the pain he is willing to suffer for his commitment to her.  *See id*. ("What you don't understand is/I'd catch a grenade for ya/Throw my hand on a blade for ya/I'd jump in front of a train for ya/You know I'd do anything for ya . . . .").  At the end of the song, the man confesses that even though he knows that she does not love him, and never did, he is still committed to her, and still willing to suffer for her.  *See id.* at 2 ("If my body was on fire/Ooh, you'd watch me burn down in flames/You said you loved me, you're a liar/'Cause you never, ever, ever did, baby/But darling, I'd still catch a grenade for ya . . . .).

Plaintiff is an inmate at Pickneyville Correctional Center.  Compl. at 4, ¶ 3.  He alleges that he is a songwriter and performer who has created songs in the Pop genre. *Id*. ¶ 11.[2]

### B.    Plaintiff Brings Suit For Infringement

Plaintiff alleges that in 2010 he wrote the lyrics to a song entitled "Cry." Compl. ¶ 15.  Plaintiff has annexed to his Complaint a Copyright Registration, which references the lyrics to a song named Cry (Compl. Ex. A), and which specifically

---

[2] Solely for the purposes of this motion, Atlantic Records assumes the truth of the allegations in the Complaint.  However, should Plaintiff's Complaint survive the present Motion, Atlantic Records intends to vigorously dispute Plaintiff's allegations of (without limitation) access and copying in discovery.

excludes the music of this song from the Registration.

Cry tells the story of a man who discovers that his wife or fiancée ("You didn't even have on your ring"; "I introduced you as my spouse") has been carrying on an affair with another man ("I saw you with him thee [*sic*] other day"; "What makes him so much better than me?"; "You had to tip toe through our house, Creeping in the dark like you a mouse"; "you were the woman that I adored come to find out you were a whore"; "You brought an intruder into our house, When you knew I would be out"). Compl. Ex. B. The discovery of the affair causes the man tremendous emotional pain ("My hearts [*sic*] in pain cause you cut me deep"; "Pain is thee [*sic*] only thing that I feel"). *Id*. The wife or fiancée then expresses remorse for her actions and wants to remain with the man, but the man leaves her ("So now you crying, crying for me baby, you didn't give to me give to me Lady, So now its [*sic*] bye, bye baby, you played with my heart, but now you feel my pain"). *Id*. Towards the end of the song, it is revealed that the man is "thankful" to the woman because since leaving her, "I found someone, and she said she's gone have my son, And we plan on getting married someday . . . ." *Id*.

According to Plaintiff, at some point prior to his incarceration, a music production and distribution company, 1st and 15th Records, allegedly indicated an interest in Plaintiff as a potential recording artist and suggested it would consider producing an album by Plaintiff if Plaintiff could find a reputable executive producer. Compl. ¶ 16. Plaintiff allegedly thereafter contacted Atlantic Records to see whether Atlantic Records had an interest in being Plaintiff's executive producer. Compl. ¶ 16.

Plaintiff claims that he met with "Atlantic Records" in Chicago on January 23, 2010. Compl. ¶ 19. He does not provide the name of any person with whom he met at Atlantic Records that day, nor does he identify, at any point in the Complaint, the name of any individual from Atlantic Records with whom he purportedly corresponded in 2010. Plaintiff alleges that during the meeting he played some of his songs, including Cry, and provided a compact disc containing Cry and other songs to an "Atlantic

4

Records' A&R [Artists & Repertoire] rep" in Chicago.  Compl. ¶¶ 20-21.  Plaintiff also claims to have sent Atlantic Records his songs, including Cry, in early 2010.  Compl. ¶ 18.[3]

Plaintiff alleges that Atlantic Records expressed interest in Plaintiff but wanted 1st and 15th Records to fund the album.  Compl. ¶ 23.  However, "the proposed infusion of funds from 1st and 15th records [*sic*] did not materialize, and the project did not proceed."  Compl. ¶ 24.  Plaintiff does not allege how Bruno Mars (or any other writer of Grenade) obtained access to Cry, other than his allegation that the (entire) company Atlantic Records has been Bruno Mars's "close friend and business manager" since 2011 (a year after he supposedly met with "Atlantic").  Compl. ¶ 16.  Plaintiff alleges that approximately 13 months after his January 2010 meeting with Atlantic Records, Bruno Mars released Grenade, which Plaintiff characterizes as Bruno Mars's "version of 'Cry.'"  Compl. ¶ 25.

Plaintiff's claim is based on two "similarities" between the songs' lyrics.  First, Plaintiff claims that Grenade shares the theme of Cry, namely, "the reference in the refrains of both songs stating: How one would give his all to one's love only to never have one's acts of love never reciprocated."  Compl. ¶ 30.  However, as discussed below, even if Plaintiff's allegation of similarity is accepted, "themes" are not protectable.  Second, Plaintiff focuses on the lyrics of two phrases in the "hooks," or choruses of the two songs, namely, that Cry contains the lyrics, "I would die for you baby….but you didn't do the same" while Grenade contains the lyrics, "I would die for you, baby, but you won't do the same."  While in Grenade the first (commonplace) phrase is immediately followed by the second, in Cry, these lines are interrupted by other lyrics (and the second phrase is expressed differently in Grenade).  Compl. ¶¶ 5-8, 28-29.  The song lyrics are otherwise completely different.  As discussed above, Courts have routinely dismissed claims based on such simple, generic "similarities."

---

[3] Atlantic Records had no office in Chicago in 2010.

Exhibits B and C to the Complaint set forth the lyrics in full.[4] The first two choruses of Cry, which are alleged to have been copied, and the chorus of Grenade, are set forth below, with the lyrics at issue highlighted:

<u>Cry</u>

<u>Grenade</u>

I cry for you baby, but you don't hear me/I give you my all but you don't understand/I would die for you baby but you don't feel me/I gave you my heart But you didn't do the same/So now you crying, crying for me baby/you didn't give to me give to me Lady/So now its bye, bye baby/you played with my heart, but now you feel my pain

What you don't understand is/I'd catch a grenade for ya/Throw my hand on a blade for ya/I'd jump in front of a train for ya/You know I'd do anything for ya/oh oh oh oh oh

I would go through all this pain/Take a bullet straight right through my brain/Yes, I would die for you, baby/But you won't do the same

In both songs, the lyrics are slightly modified in the third appearance of the chorus, but not in any respect relevant or material to this Motion. *See* Compl. Ex. B at 2, Ex. C. at 2.[5] There are no other lyrical similarities between these two works.

---

[4] The lyrics to Grenade shown in Exhibit C to the Complaint are accurate except in one minor respect: they add the word "right" to the line "Take a bullet straight right through my brain." That difference is irrelevant and immaterial for the purposes of this Motion.

[5] At paragraphs 6 and 7 of the Complaint, Plaintiff inaccurately quotes both Cry and Grenade. For example, at paragraph 7, the Plaintiff quotes part of Grenade's chorus as, "I'll take a Grenade for ya, Stand In Front of A train for ya," when the correct lyrics are, "I'd catch a grenade for ya/Throw my hand on a blade for ya/I'd jump in front of a train for ya." *Compare* Compl. ¶ 7 *with* Ex. C. Notably, attempting to draw a closer comparison than merited with the line "But you won't do the same" from Grenade's chorus, Ex. C., Plaintiff misquotes a line from Cry as "but you don't do the same," Compl. ¶ 6; the true lyric is "But you didn't do the same," Ex. B.

6

Based on these shared lyrics and themes, Plaintiff asks for $20 million in damages, injunctive relief, impoundment and destruction of copies of Grenade, and other relief. Compl. at 4-5.

As demonstrated herein, Plaintiff cannot state a claim for copyright infringement as a matter of law. No amount of discovery or repleading is going to change the lyrics of the two songs. Thus, this Court can compare the works on this motion and determine now that the Complaint should be dismissed as a matter of law, with prejudice.

**ARGUMENT**

I. **STANDARD OF REVIEW**

The Supreme Court explained in *Bell Atl. Corp. v. Twombly* that Rule 8(a)(2) requires a complaint to contain a "showing" that a plaintiff is entitled to relief, and that "blanket assertion[s]" cannot meet this substantive threshold. 550 U.S. 544, 555 n. 3 (2007) (citation omitted). A motion to dismiss under Rule 12(b)(6) is meant to test the sufficiency and plausibility of a plaintiff's allegations. *Id.* at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In order to survive a motion to dismiss, the plaintiff must plead facts with sufficient particularity so that his right to relief is more than mere conjecture. *See Iqbal*, 556 U.S. at 677-78; *Twombly*, 550 U.S. at 555-57, 561-62. Dismissal is warranted where the complaint fails to allege facts stating a claim for relief that is plausible on its face. *Twombly*, 550 U.S. at 570.

In deciding a motion to dismiss, the Court may consider the pleadings, exhibits attached to the complaint, materials incorporated into the complaint by reference, materials integral to the complaint, and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007); *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). In light of these principles, Atlantic Records respectfully requests that the Court consider the following materials, in addition to the facts alleged

in the Complaint and the Complaint's exhibits:

- A complete, side-by-side comparison between the lyrics of Cry and the lyrics of Grenade, based exclusively on the lyrics that Plaintiff included as Exhibits B and C to the Complaint, without edits or modification (Farkas Decl. Ex. 1);
- Song title search results from the Copyright Office's publicly available database (Farkas Decl. Ex. 2); and
- The Court's September 6, 2013 Order in *Steward v. West*, No. 2:13-cv-02449 BRO (JCx) (Farkas Decl. Ex. 3).[6]

*See e.g.*, *Brave New Films 501(c)(4) v. Weiner*, No. C 08-04703 SI, 2009 WL 1622385, at *1 n.2 (N.D. Cal. June 10, 2009) (taking judicial notice of a record from the U.S. Copyright Office's website).

If, after reviewing this material, the Court finds that no protectable elements have been copied, or that the two works are not substantially similar, it may dismiss Plaintiff's copyright infringement claim on a Rule 12(b)(6) motion, as Courts have routinely done in infringement cases. *See Christianson v. West Publ'g Co*, 149 F.2d 202, 203 (9th Cir. 1945) ("There is ample authority for holding that when the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss."); *DuckHole Inc. v. NBC Universal Media LLC*, No. CV 12–10077 BRO (CWx), 2013 WL 5797279, at *5 (C.D. Cal. Sept. 6, 2013) (citing *Christianson* and noting that "[t]he Ninth Circuit has long held that non-infringement can be determined on a motion to dismiss"). *See also, e.g., Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124 (C.D. Cal. 2007) (granting motion to dismiss infringement claim on numerous grounds, including that the claimed similarities were unprotectable *scenes a faire* and that the works were not substantially similar).

---

[6] At the time of the filing of this Motion, this Order from *Steward v. West* did not appear to be available on Westlaw or LEXIS.

## II.  PLAINTIFF FAILS TO STATE A CLAIM FOR COPYRIGHT INFRINGEMENT

A plaintiff asserting a copyright infringement claim must show "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Telephone Serv. Co., Inc.*, 499 U.S. 340, 361 (1991); *Funky Films, Inc. v. Time Warner Ent. Co., L.P.*, 462 F.3d 1072, 1076 (9th Cir. 2006) (quoting *Feist*).  No direct copying is alleged; rather, Plaintiff bases his claim on circumstantial allegations of copying and the alleged substantial similarity of the two sets of lyrics.  *See Funky Films, Inc.*, 462 F.3d at 1076.  As set forth below, the allegedly similar elements between these two works do not rise to the level of original, protectable expression, nor could any reasonable juror find that these two works are substantially similar as a matter of law.

### A.  The Allegedly Copied Elements Of Cry Are Unprotectable As A Matter Of Law

Mere allegations of copying alone are not sufficient to state a claim, because not all copying amounts to copyright infringement.[7]  *Feist*, 499 U.S. at 361.  A copyright infringement claim requires "copying of constituent elements of the work that are *original*."  *Id.* at 348, 361 (emphasis added) ("Originality remains the *sine qua non* of copyright; accordingly, copyright protection may extend only to those components of a work that are original to the author.") (citation omitted); *see also Funky Films, Inc.*, 462 F.3d at 1076.  When the similarities alleged consist solely of unprotected elements, such as concepts, ideas, or commonplace unoriginal expression, no claim of infringement has been alleged.  *Feist*, 499 U.S. at 364.

#### 1.  The Short, Commonplace Phrases At Issue Are Not Original to Plaintiff or Otherwise Protectable

Plaintiff's infringement claim is based solely on the chorus lyrics ("the refrain or

---

[7] Again, Atlantic Records disputes any copying occurred but is simply treating the allegations of the Complaint as true for purposes of this motion only.

hook") of the two songs.  *See* Compl. ¶¶ 6-7, 28-30.  However, Plaintiff's claim focuses even more narrowly on only two phrases within each of these choruses – as he must – as the rest of the choruses are entirely different:

| Cry (First Two Choruses) | Cry (Final Chorus) | Grenade |
|---|---|---|
| I would die for you baby but you don't feel me/I gave you my heart But you didn't do the same | I would have died for you baby, but you didn't feel me/I gave you my heart, but you didn't do the same, | Yes, I would die for you, baby/But you won't do the same |

*See* Compl. Exs. B and C.  Plaintiff cannot, however, obtain protection for the phrases "I would die for you baby" (or "I would have died for you baby") or "But you didn't do the same."  These phrases are not protectable, as a matter of law.

It is well settled that short phrases are not protectable expression and cannot form the basis of an infringement claim.  37 C.F.R. § 202.1(a) (under the short phrases doctrine, "[w]ords and short phrases such as names, titles, and slogans" are not subject to copyright protection); *Advanz Behavioral Mgmt. Res. v. Miraflor*, 21 F. Supp. 2d 1179, 1190 (C.D. Cal. 1998) ("Words or short phrases, of course, are not themselves copyrightable subject matter.").  Similarly, ordinary or commonly used phrases are not entitled to copyright protection.  *Narell v. Freeman*, 872 F.2d 907, 911 (9th Cir. 1989) (explaining that "[o]rdinary phrases are not entitled to copyright protection" and finding no infringement for the copying of commonly used expressions) (citation omitted); *Counts v. Meriwether*, No. 2:14–cv–00396-SVW-CW, 2015 WL 9594469, at *14 (C.D. Cal. Dec. 30, 2015) (Wilson, J.) ("Ordinary words and phrases are not entitled to copyright protection . . . .).

The phrases from Cry that are even arguably similar to ones that appear in Grenade ("I would die for you baby" and "But you didn't do the same") are lyrical snippets too short and ordinary to support an infringement claim. *See e.g.*, *Narell*, 872 F.2d at 911 (finding no protection for common expressions such as "mosquitos ravished his flesh," "staggering network," "cow path," and "crawling with alligators"); *Counts*, 2015 WL 9594469, at *14 (holding that the phrase "Wow! Look at you" was ordinary and thus unprotectable); Farkas Decl. Ex. 3 (*Steward v. West*, No. 2:13-cv-02449 BRO (JCx), at *6 (C.D. Cal. Sept. 6, 2013) (holding that the phrases "Get Down," "Step Up," "It's the Hottest Thing," and "Step Up Front" were not protectable)); *Benal v. Paradigm Talent and Literary Agency*, 788 F. Supp. 2d 1043, 1071-72 (C.D. Cal. 2010) (Wilson, J.) (holding that phrases such as "We used to have so much fun," "stay out of this," and "Mmm. That's working" were "ordinary, common expressions that are not copyrightable"); *Reed v. Peterson*, No. C04-00228 WWS, 2005 WL 1522187, at *3 (N.D. Cal. June 27, 2005) (finding no protectability for the short phrase "take-a-knee").

Indeed, a simple search through the Copyright Office database for the phrase "I would die for you" reveals 58 results for *titles* alone (to say nothing of song lyrics) that include that exact phrase, a vast majority of which were registered before Plaintiff wrote Cry. *See* Farkas Decl. Ex. 2; *cf. Braham v. Sony/ATV Music Publ'g*, No. 2:15–cv–8422, 2015 WL 7074571-MWF (GJSx), at *5 (C.D. Cal. Nov. 15, 2015) (decision by Magistrate Judge recommending dismissal based in part on finding that the plaintiff's use of the phrases "players gonna play" and "haters gonna hate" lacked originality given their widespread use on the Internet); *Peters v. West*, 692 F.3d 629, 635-36 (7th Cir. 2012) (dismissing complaint based on, in part, the widespread use of the aphorism at issue, "what does not kill me, makes me stronger"; defendant's use of a variation of the phrase did not infringe on the plaintiff's lyric, "What don't kill me make me stronger").

Likewise, phrases and expressions that are typically used to express an idea, or

plot elements that naturally flow from a premise, are similarly not protectable.  *See Narell*, 872 F.2d at 911 ("Phrases and expressions conveying an idea typically expressed in a limited number of stereotyped fashions are not subject to copyright protection.") (citation omitted); *Counts*, 2015 WL 9594469, at *8, *14 (discussing the *scenes a faire* doctrine and quoting *Narell*).  The stereotypical phrases "I would die for you" and "you won't do the same" to connote unrequited or failed love is hardly something that the Plaintiff can own.

This Court has considered whether certain elements in works about affairs and breakups were unprotectable under the *scenes a faire* doctrine, and has consistently determined that the allegedly copied elements were unprotectable.  The purportedly copied lyrics from Cry's chorus call for the same conclusion.  In *Counts*, where the allegedly infringing work shared numerous scenes in common with the plaintiff's, including scenes wherein a protagonist broke up with a partner because of infidelity, became depressed, and temporarily returned to her cheating partner, the Court determined that the allegedly copied scenes were not protectable because they all "flow[ed] naturally from the basic premise of a protagonist suffering from a break-up and ultimately moving past the break-up."  2015 WL 9594469, at *10.  Similarly, in *Hayes v. Minaj*, the Court held that various plot elements, such as characters being involved in a "love triangle" and characters breaking up and getting back together, were "tantamount to either basic ideas or *scenes a faire* that naturally flow from the premise of unfaithful men cheating on their partners or mistresses."  2:12-cv-07972-SVW-SH, 2013 WL 11328453, at *7 (C.D. Cal. Mar. 7, 2013) (Wilson, J.).  The same result should obtain here.

2. Even Assuming, *Arguendo,* That The Two Songs Share A Broad Theme, Themes Are Not Protectable As A Matter of Law

Plaintiff also suggests that Grenade copied the theme of Cry, specifically, "the reference in the refrains of both songs stating: How one would give his all to one's love only to never have one's acts of love never reciprocated."  *See* Compl. ¶ 30.

Putting aside the differences in the themes of the two songs,[8] even if, *arguendo*, the themes were identical, the law is clear that Plaintiff cannot claim copyright ownership over a theme, which is nothing more than an unprotectable idea. *See* 17 U.S.C. § 102(b) (providing that copyright protection cannot be extended to an idea); *Althouse v. Warner Brothers Ent.*, No. CV 13–00696-RGK (SSx), 2014 WL 2986939, at *3 (C.D. Cal. Apr. 28, 2014) (finding no protection for a science fiction screenplay's themes of allusions to Christ and renewal of the world following a Christ-like figure's actions); *Miller v. Columbia Broad. Sys., Inc.*, No. CV 78-4291-RMT (Sx), 1980 WL 1179, at *2 (C.D. Cal. June 5, 1980) (explaining that "[i]deas, themes, locale or characters in an author's copyrighted works are not protected by the law of copyright" and refusing to extend protection to the theme of a convict who studies law in prison). It is black letter Copyright law that ideas and themes are not protectable; rather, it is the expression of those themes and ideas that can rise to the level of protectable expression. As the Court can see for itself, even if a broad theme can be extracted here, such a theme is expressed quite differently in each song.

Accordingly, none of the alleged similarities are protectable by copyright law. For this reason alone, the Court can and should dismiss the Complaint with prejudice.

**B.     No Substantial Similarity Exists Between Plaintiff's Song And Bruno Mars's Song**

Even assuming, *arguendo*, that Plaintiff had alleged any similarity of protectable expression between the two songs (which he has not), and the Court assumes access for purposes of this motion, the two works are not substantially similar and thus Plaintiff cannot maintain a claim for infringement. The test for substantially similarity has both an "extrinsic" and "intrinsic" component. *White v. Twentieth Century Fox Corp.*, 572 Fed. Appx. 475, 476 (9th Cir. 2014). The extrinsic component compares "specific criteria which can be listed and analyzed" to determine whether the works are

---

[8] For example, Cry includes descriptions of an affair and a new love interest following a breakup, while Grenade contains neither of these elements.

substantially similar.  *Funky Films, Inc.*, 462 F.3d at 1077 (citation and quotations omitted); *see also Gold Glove Prods., LLC v. Handfield*, 648 Fed. Appx. 679, 680 (9th Cir. 2016) (describing the extrinsic test as "an objective comparison of specific expressive elements").

The intrinsic test, by contrast, looks to an "ordinary person's subjective impressions of the similarities between two works." *Funky Films, Inc.*, 462 F.3d at 1077.  The intrinsic test is a subjective comparison, which focuses on whether the ordinary, reasonable audience would find that the defendants took something belonging to the Plaintiff and find the works substantially similar in "total concept and feel."  *Gold Glove Prods., LLC*, 648 Fed. Appx. at 680.

Because a plaintiff must satisfy both the extrinsic and intrinsic components to show substantial similarity, on a motion to dismiss this Court can determine whether the Plaintiff's claim fails under the extrinsic test, and, if so, the Court can stop there and dismiss the complaint on the basis that the works are not substantially similar as a matter of law.  *See White*, 572 Fed. Appx. at 476-77 (affirming the district court's dismissal of the plaintiff's complaint based on its finding of no substantial similarity between the plaintiff's work and the allegedly infringing works).

Here, Plaintiff has presented the Court with complete copies of his lyrics and the defendants' allegedly infringing lyrics.  *See* Compl. Exs. B and C.  A side-by-side comparison of the songs' lyrics under the extrinsic test for substantial similarity illustrates the vast differences between the two works.  Indeed, apart from the two phrases identified in the Complaint, these two sets of lyrics have *no other lyrics in common*.  They are overall very different songs.  *See* Farkas Decl. Ex. 1; *see also Toliver v. Sony Music Entm't, Inc.*, 149 F. Supp. 2d 909 (D. Alaska 2001) (finding no substantial similarity under the extrinsic test between lyrics to the plaintiff's song, "Independent Lady," and the lyrics to the well-known Destiny's Child song, "Independent Women (Part I)"), *aff'd,* 47 Fed. Appx. 496 (9th Cir. 2002); *Pyatt v. Raymond*, 462 Fed. Appx. 22, 24 (2d Cir. 2013) (affirming dismissal of infringement

claim based in part on finding that the two songs at issue "ha[d] little in common beyond the title and the phrase "Caught Up").

Indeed, the songs are completely dissimilar, for instance, in their structure, meter and rhyme, including in their choruses, the sole part of the two songs that Plaintiff has identified as purportedly substantially similar. *See e.g.*, Compl. ¶¶ 28-30. The first half of Plaintiff's chorus consists of four multi-clause phrases, each beginning with the word "I" and containing the word "but" halfway through:

> I cry for you baby, but you don't hear me
> I give you my all but you don't understand
> I would die for you baby but you don't feel me
> I gave you my heart But you didn't do the same

Compl. Ex. B. Grenade's chorus contains nothing similar. *See* Compl. Ex. C. In these first four lines of Cry's chorus, the rhyme scheme is limited to the pairing "cry" and "die." *Id*. The words "baby" and "me" are also repeated at approximately the same place on the first and third lines. *Id*. The second half of Plaintiff's chorus then alternates between the words "so" and "you" for the beginning of each line, and ends three of the four lines with a rhyme between the words "baby" and "Lady":

> So now you crying, crying for me baby,
> you didn't give to me give to me Lady
> So now its bye, bye baby,
> you played with my heart, but now you feel my pain

*Id*. The only other rhyme in the second half is "crying, crying" rhymed with "bye, bye."

In contrast, the chorus of Grenade begins with a series of short, declarative statements that, with the exception of the very first line, end in the colloquialism "ya":

> What you don't understand is
> I'd catch a grenade for ya
> Throw my hand on a blade for ya
> I'd jump in front of a train for ya
> You know I'd do anything for ya

15

Compl. Ex. C. The rhyme scheme is much more complex and nuanced than Plaintiff's: "grenade" is rhymed with "blade" (underscoring the theme of self-sacrifice by rhyming words for two objects of violence); "train" is rhymed with "anything" (connecting the specific, dramatic examples of the pain the narrator is willing to undergo to his broader commitment to his partner). The rhyme scheme established in the first part of the chorus with the word "train" is then carried over into the second part, which continues the rhyme scheme with the words "pain," "brain," and "same":

> I would go through all this pain
> Take a bullet straight right through my brain
> Yes, I would die for you, baby
> But you won't do the same

Compl. Ex. C. Although both choruses share the similar, short phrases noted above (*e.g.*, "I would die for you"), these substantial differences in structure, meter and rhyme are alone enough to distinguish the two choruses under the substantial similarity test. *See Braham*, 2015 WL 7074571, at *5 (noting dissimilarity between plaintiff's use of the phrases "players gonna play" and "haters gonna hate," which lacked any repetitive element, and defendant Taylor Swift's use, which repeated the last word of each phrase as "haters gonna hate, hate, hate, hate, hate" and "players gonna play, play, play, play, play"); *Toliver*, 149 F. Supp. 2d at 917 (noting that while the plaintiff's lyrics contained only one question, the defendant's song contained a number of questions, most of which were "formatted with the use of a colon after the word 'question' and do not conclude with a question mark").

Additionally, the phrases that the two choruses arguably have in common (Plaintiff's "I would die for you baby" and "But you didn't do the same," and Bruno Mars's "I would die for you, baby/But you won't do the same") are used in different ways in the two works. They appear in different parts of each chorus: Plaintiff's phrase, "I would die for you baby," appears on the first half of the chorus's third line

and "But you didn't do the same" appears in the second half of the fourth line, such that the two phrases appear in the first section of Plaintiff's eight-line chorus and are interrupted by other lyrics; by contrast Grenade's nine-line chorus ends with the two lines, "I would die for you, baby/But you won't do the same." There are, moreover, differences in the wording of those phrases between the two songs. Cry alternates between "I would die for you baby," Compl. Ex. B. at 1, and "I would have died for you baby," Compl. Ex. B. at 2, while Grenade consistently uses "I would die for you baby"; Cry includes the phrase "But you *didn't* do the same," (suggesting past) Compl. Ex. B (emphasis added), while Grenade uses the phrase "But you *won't* do the same," (suggesting present or future) Compl. Ex. C (emphasis added). Altogether, the songs' differences in imagery, meter, rhyme, structure, and wording completely outweigh the coincidence of somewhat similar, unprotectable short phrases in the choruses. Again, apart from these two phrases, the songs are entirely otherwise different, and there are no similarities that exist (or are alleged) in the verses or bridges of each song.

Plaintiff's claims cannot pass the extrinsic component. Nor could Plaintiff's claims pass the intrinsic test. The "total concept and feel" of these two works is entirely different, and no reasonable juror could find substantial similarity between the protectable elements of the two works – particularly as there are no protectable similar elements. *See Narell*, 872 F.2d at 913 (finding no substantial similarity under the intrinsic test based on "the fundamental differences between the works and the insubstantial nature of the copied passages").

In sum, this Court can determine for itself that the two songs are entirely distinct works. The many objectively identifiable differences between Cry and Grenade predominate over the arguably shared and unprotectable elements in the works. Accordingly, there is no actionable similarity between the songs, and Plaintiff's claim

for infringement should be dismissed.[9]

<u>CONCLUSION</u>

For the foregoing reasons, it is respectfully submitted that Atlantic Records' Motion should be granted and Plaintiff's Complaint should be dismissed in its entirety with prejudice, as no amendment will change the lyrical content of the two works at issue.

**PRYOR CASHMAN LLP**

Dated: October 14, 2016       By:       */s/ Michael J. Niborski*
                                Michael J. Niborski
                                *mniborski@pryorcashman.com*
                                Ilene S. Farkas
                                (pro hac vice application forthcoming)
                                *ifarkas@pryorcashman.com*

                                *Attorneys for Defendant*
                                ATLANTIC RECORDING CORPORATION

---

[9] One of the thirteen forms of relief that Plaintiff seeks is "Damages for unfair competition and unfair trade practices." *See* Compl. at Prayer for Relief ¶ 6. Plaintiff does not assert an unfair competition or unfair trade practices claim. However, such a claim would, in any event, be preempted by the Copyright Act. *See e.g., Reed*, 2005 WL 1522187, at *6; *Motown Record Corp. v. George A. Hormel & Co.*, 657 F. Supp. 1236, 1239-40 (C.D. Cal. 1987).

18